IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-CT-3003-D

LARRY K. GREEN, a/k/a          )
SAID ABDULLAH HAKIM,           )
                               )
                Plaintiff,     )
                               )
        v.                     )                    **ORDER**
                               )
THEODIS BECK, et al.,          )
                               )
                Defendants.    )

On January 6, 2010, Larry K. Green, a/k/a Said Abdullah Hakim ("Hakim" or "plaintiff"),

a state inmate, filed this action under 42 U.S.C. § 1983 ("section 1983"). Compl. [D.E. 1].[1] Hakim

proceeds pro se and in forma pauperis [D.E. 2]. On July 26, 2010, the court directed Hakim to

particularize the claims in his complaint and specifically noted that "[t]he amended complaint will

supplant Hakim's previous complaints" and that it would review the amended complaint to

determine whether severance of plaintiff's claims is appropriate [D.E. 26]. On August 5, 2010,

Hakim timely responded to the court's order and filed a motion to amend the complaint. Am.

Compl. [D.E. 31]. On February 14, 2011, the court reviewed Hakim's amended complaint and

allowed Hakim to proceed only as to pages six through nine of the amended complaint [D.E. 45].

On February 22, 2011, Magistrate Judge William A. Webb issued a scheduling order [D.E. 46].

On February 23, 2011, Hakim filed a notice of interlocutory appeal [D.E. 47]. On April 15,

2011, the remaining defendants filed a motion to dismiss [D.E. 52]. Pursuant to Roseboro v.

Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Hakim about the motion

--------

[1]The court uses "Hakim" to identify plaintiff for brevity purposes only.

to dismiss, the consequences of failing to respond, and the response deadlines [D.E. 54]. On April 18 and May 5, 2011, Hakim filed responses in opposition to the motion to dismiss [D.E. 55–56].[2] On June 1, 2011, the United States Court of Appeals for the Fourth Circuit dismissed Hakim's appeal for lack of jurisdiction [D.E. 57]. On July 27, 2011, the Fourth Circuit issued its mandate [D.E. 61]. As explained below, the motion to dismiss is granted in part and denied in part.

I.

In analyzing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted," a court must determine whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949–50 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 569–70 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), cert. granted, 131 S. Ct. 3059 (2011); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." Nemet Chevrolet, Ltd. v. Consumeraffairs .com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); see also Iqbal, 129 S. Ct. at 1949–50. Similarly, a court need "not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 129 S. Ct. at 1949–50. Furthermore, in analyzing a Rule 12(b)(6) motion to dismiss, a court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

---

[2] The responses are 29 pages in length, plus 21 pages of attachments.

Case 5:10-ct-03003-D   Document 63   Filed 10/31/11   Page 2 of 9

Hakim's remaining claims concern the North Carolina Department of Correction ("DOC") refusal to recognize his legal name change, and issues that have arisen as a result. Hakim asserts that on January 24, 2005, in Lenoir County, North Carolina, he legally changed his name from Larry K. Green to Said Abdullah Hakim to reflect his Muslim faith. [D.E. 55] 1–2; [D.E. 56] 1. In 2008, Hakim was convicted in Lenoir County Superior Court of possession of schedule II narcotics and sentenced as a habitual felon to a 104-month prison term. See Compl. 3; N.C. Dep't of Corr., Offender Pub. Info., http://webapps6.doc.state.nc.us/opi/viewoffender.do?method= view&offenderID=0154730&searchOffenderId=0154730&listurl= pagelistoffendersearchresults&listpage =1 (last visited Oct. 31, 2011). Before changing his name, Hakim (then Green) served four terms of incarceration in DOC custody. See [D.E. 55] 2; N.C. Dep't of Corr., Offender Pub. Info., http://webapps6.doc.state.nc.us/opi/viewoffender.do?method=view& offenderID=0154730&searchOffenderId=0154730&listurl=pagelistoffendersearchresults&listpage=1 (last visited Oct. 31, 2011).

Upon his 2008 admission to DOC custody at Craven Correctional Institution ("Craven"), defendant O'Neal, an administrative sergeant at Craven, "stated, 'Even though you came in . . . as Said Abdullah Hakim, you're going to be Larry K. Green for . . . DOC purposes, from now on.'" Am. Compl. 9, see also [D.E. 56] 2. Hakim alleges that upon his transfer to Pender Correctional Institution ("Pender"), Pender staff "carefully no[ted] all plaintiff's court records reflecting Said Abdullah Hakim & his . . . DOC ID card reflecting only Larry K. Green," but defendant Bell, who is the superintendent at Pender, "did absolutely nothing about it" even though he was "forewarned" by the actions of his staff. Am. Compl. 7.[3] Hakim also alleges that certain "medical/disability

_____

[3] In his response in opposition to defendants' motion to dismiss, Hakim asserts that Bell "was also indirectly warned for the 3 mo. substance abuse treatment time plaintiff was at his facility, via" Pender staff. [D.E. 56] 2.

3

records were sent to him" at Pender on May 7, 2008, but Hakim "neither signed for, nor consented for . . . DOC to have [the records] in their possession . . . ." Id.; see also [D.E. 56] 8 (alleging that Bell's "staff literally stole federal disability claim med rec'ds") & Ex. B (providing a May 16, 2008, letter from Bell to Hakim describing investigation into Hakim's allegation of confiscated mail and stating that there is "no indication that this correspondence, records, or documents ever arrived at this location").

The majority of Hakim's allegations concern the time he spent incarcerated at Lumberton Correctional Institution ("Lumberton"), where defendant Thomas is the superintendent, and defendant Taylor is the assistant superintendent. Hakim asserts that the Lumberton mail room staff (supervised by Thomas and Taylor) delivered to Hakim "'yet another Larry Green's . . . inmate mail . . .'" Am. Compl. 8; see also [D.E. 56] 11. Hakim wrote Thomas a letter concerning his name change, "complete w/ copies of his 'name change order per Lenoir Co. Clerk'" and filed a grievance, which Hakim contends

> should have been enough, to acquire/require any [DOC] superintendent's professionalism to contact the Chief of Auxiliary Services in Raleigh & fix this minor technicality, instead negligence, careless/reckless disregard w/ an evil, malicious/sadistic intent appeared, so she did nothing, but followed suit & allowed plaintiff's . . . legal name change & freedom of religious expression to continue to be violated . . . .

Am. Compl. 7–8; see also [D.E. 56] 2. Hakim further asserts that defendant Taylor "runs this facility . . . via bigotry, racism, & disparity, [] for programs, medical & mailroom depts all fall under his direct supervision." Am. Compl. 8. Moreover, Hakim alleges that defendants Thomas and Taylor retaliated against him after he "filed a Petition for a Writ of Certiorari . . . in the US Supreme Court" and caused Hakim's "retaliatory transfer from [Lumberton] to [Tabor Correctional Institution] . . . ." Id. 7–8; see also [D.E. 56] 9. Hakim also claims that he once was "almost given"

4

another Larry Green's medication. Id. 9. Hakim seeks "nominal, compensatory & punitive damages . . . ." Am. Compl. 6–9.

## II.

As for Hakim's allegation that defendant Taylor "runs [Lumberton] via bigotry, racism, & disparity," Am. Compl. 8, the Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Hakim has not made plausible allegations to support his equal protection claim. Accordingly, Hakim has failed to state a claim for a violation of his equal protection rights.

As for Hakim's claim concerning the non-delivery of his mail on May 7, 2008, and receiving mail addressed to another Larry Green on another occasion, defendants seek dismissal of this claim because "a single delay or interference with plaintiff's mail service does not constitute a denial of his right to access the courts, and such delay does not raise a question of constitutional proportion." Defs.' Mem. Supp. Mot. Dismiss [D.E. 53] 5. The court agrees. Isolated incidents of mail mishandling do not rise to the level of a constitutional violation. See, e.g., Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003); Buie v. Jones, 717 F.2d 925, 926 (4th Cir. 1983); Pearson v. Simms, 345 F. Supp. 2d 515, 519–20 (D. Md. 2003), aff'd, 88 F. App'x 639 (4th Cir. 2004) (per curiam) (unpublished). Moreover, to state a claim for a constitutional violation, a plaintiff must show actual injury by the opening. See Lewis v. Casey, 518 U.S. 343, 352–54 (1996). To show an actual injury, the inmate must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." Id. at 353 (footnotes omitted). Hakim has failed to allege any actual injury. Indeed, his

5

voluminous filings demonstrate that he has access to the courts. Moreover, Hakim describes the mail issue as stemming from "the defendants' negligence/unprofessionalisms," [D.E. 56] 11, and does not allege any facts to show that the confiscation of his mail was anything other than an isolated incident. Accordingly, the court dismisses Hakim's claims concerning the mail.

As for Hakim's claim that he "was almost given" another inmate's medication, defendants seek dismissal of this claim. To prove a claim for inadequate medical care, a plaintiff must demonstrate that the defendant "acted with 'deliberate indifference' (subjective) to [plaintiff's] 'serious medical needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). "[D]eliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Deliberate indifference requires that an official actually know of and disregard an objectively serious condition, medical need, or risk of harm. See id. at 837; Iko, 535 F.3d at 241. Hakim must demonstrate that the care provided was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990); Hicks v. James, 255 F. App'x 744, 749 (4th Cir. 2007) (per curiam) (unpublished). Mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. See Estelle, 429 U.S. at 105–06; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). Hakim has failed to plausibly allege that any defendant acted with deliberate indifference to his medical needs, or that the care provided him was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier, 896 F.2d at 851. Although Hakim claims that he was "almost given" another inmate's medication "on order of . . . defendants, Thomas & Taylor," Am. Compl. 9, Hakim does not allege that he was actually

6

ever given the wrong medication or allege that he was ever denied any requested medical care or allege any injury from "almost" taking another inmate's medication. Accordingly, the court dismisses Hakim's claim concerning incorrect medication.

Next, defendants seek dismissal of Hakim's claims on the ground that Hakim attempts to hold them liable for the conduct of others under a theory of supervisory liability. Defs.' Mem. Supp. Mot. Dismiss 6–7. Hakim contends that his allegations "prove[] supervisory liability, as all defendants were, in fact[,] supervisors who had directly participated, plus had actual/constructive knowledge of the conduct that caused a statutory/constitutional injury to the plaintiff . . . ." [D.E. 56] 8.

The doctrine of respondeat superior generally does not apply to a section 1983 action. See, e.g., Iqbal, 129 S. Ct. at 1948–49; Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Carter v. Morris, 164 F.3d 215, 218, 220–21 (4th Cir. 1999); Shaw v. Stroud, 13 F.3d 791, 798–99 (4th Cir. 1994). However, section 1983 claims against supervisors are cognizable when liability is not premised upon respondeat superior but upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984).

To establish supervisory liability under section 1983, plaintiff must establish three things:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices . . ."; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw, 13 F.3d at 799; see Iqbal, 129 S. Ct. at 1949; Rizzo v. Goode, 423 U.S. 362, 371 (1976); Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001). The subordinate's conduct must be

7

"pervasive," meaning that "the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." Shaw, 13 F.3d at 799 (quotation omitted). Although

> a supervisor cannot be expected . . . to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct[,] [a] supervisor's continued inaction in the face of documented widespread abuses . . . provides an independent basis for finding [that the supervisor] either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates.

Slakan, 737 F.2d at 373; see Randall v. Prince George's Cnty., Md., 302 F.3d 188, 206 (4th Cir. 2002).

Hakim has not plausibly alleged a claim for supervisory liability. Hakim has not alleged any supervisory defendant's "continued inaction in the face of documented widespread abuses . . . [that] permitted the constitutional abuses to continue unchecked." Slakan, 737 F.2d at 373. Moreover, a failure to investigate a grievance, without more, does not rise to the level of a constitutional violation. See, e.g., George v. Smith, 507 F.3d 605, 609–10 (7th Cir. 2007); Beers-Capitol v. Whetzel, 256 F.3d 120, 140–41 (3d Cir. 2001). Accordingly, the court dismisses Hakim's claims against defendants Kenworthy, Thomas, Bell, and Taylor.

However, as to defendant O'Neal, the court denies the motion to dismiss Hakim's claim concerning the failure to recognize his name change. Hakim's allegations state that O'Neal was the one who admitted him into DOC custody after his 2008 conviction, and refused to recognize his name change in violation of Hakim's rights under the Free Exercise Clause of the First Amendment. On a more fully developed record, the court will entertain a motion for summary judgment.

Finally, to the extent Hakim seeks to assert any new claims, see, e.g., [D.E. 55] 1 (stating that "plaintiff & all other Shiite Muslims [are forced] to participate/enjoin Sunni Muslim tenets/religious

activities"), 3 (describing "'Inadequate Medical Care/Attn'"), 4 (describing "the most current/recent campaigns of harassment" and seeking a transfer), 5 (complaining of medical care at Harnett Correctional Institution), 9 (describing issues with his mail at Harnett Correctional Institution); [D.E. 56] 8 (describing being required to work at a job that he is medically unable to perform), 13 (describing "excessive uses of force"), the court has previously informed Hakim that he may not continue to assert new claims against unrelated defendants in every filing. Thus, to the extent Hakim seeks to assert new claims, the court dismisses those claims without prejudice.

III.

In sum, for the reasons stated, the court GRANTS IN PART defendants' motion to dismiss [D.E. 52]. Only plaintiff's claim against defendant O'Neal concerning his name change remains. The court DIRECTS Judge Webb to amend the scheduling order and establish a schedule for resolving the remaining claim.

SO ORDERED. This **31** day of October 2011.

JAMES C. DEVER III
Chief United States District Judge