IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-CT-3003-D

LARRY K. GREEN, a/k/a )
SAID ABDULLAH HAKIM, )
           )
    Plaintiff, )
           )
v. )  **ORDER**
           )
THEODIS BECK, et al., )
           )
    Defendants. )

On January 6, 2010, Larry K. Green, also known as Said Abdullah Hakim ("Hakim" or "plaintiff"), a state inmate, filed this action under 42 U.S.C. § 1983 ("section 1983"). Compl. [D.E. 1].[1] Hakim proceeds pro se and in forma pauperis [D.E. 2]. On July 26, 2010, the court directed Hakim to particularize the claims in his complaint and specifically noted that "[t]he amended complaint will supplant Hakim's previous complaints" and that it would review the amended complaint to determine whether severance of plaintiff's claims is appropriate [D.E. 26]. On August 5, 2010, Hakim timely responded to the court's order and filed a motion to amend the complaint. Am. Compl. [D.E. 31]. On February 14, 2011, the court reviewed Hakim's amended complaint and allowed Hakim to proceed only as to pages six through nine of the amended complaint [D.E. 45].

On February 23, 2011, Hakim filed a notice of interlocutory appeal [D.E. 47], which the United States Court of Appeals for the Fourth Circuit dismissed on June 1, 2011 [D.E. 57–58]. On October 31, 2011, the court granted in part a motion to dismiss by the remaining defendants, and allowed Hakim to proceed with his claim concerning his name change against defendant O'Neal

---

[1] The court uses "Hakim" to identify plaintiff for brevity purposes only.

[D.E. 63]. On November 8, 2011, Hakim filed a notice of interlocutory appeal [D.E. 65], which the United States Court of Appeals for the Fourth Circuit dismissed on April 30, 2012 [D.E. 72–73].

On February 9, 2012, defendant O'Neal filed a motion for summary judgment [D.E. 69], along with the declaration of Warren Correctional Institution Superintendent Joyce Kornegay ("Kornegay") [D.E. 70-1]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Hakim about the motion for summary judgment, the consequences of failing to respond, and the response deadlines [D.E. 71]. Hakim has not filed any response in opposition to the motion for summary judgment, and the time within which to do so has expired. As explained below, the court grants the motion for summary judgment.

I.

Hakim's remaining claim concerns the refusal of the North Carolina Department of Public Safety ("DOPS")[2] refusal to recognize his legal name change, and issues that have arisen as a result. Hakim asserts that on January 24, 2005, in Lenoir County, North Carolina, he legally changed his name from Larry K. Green to Said Abdullah Hakim to reflect his Muslim faith. [D.E. 55] 1–2; [D.E. 56] 1. In 2008, Hakim was convicted in Lenoir County Superior Court of possession of schedule II narcotics and sentenced as a habitual felon to a 104-month prison term. See Compl. 3; N.C. Dep't of Pub. Safety, Offender Pub. Info., http://webapps6.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0154730&searchOffenderId=0154730&listurl=pagelistoffendersearchresults&listpage =1 (last visited May 15, 2012). Before changing his name, Hakim (then Green) served four terms of incarceration in DOPS custody. See [D.E. 55] 2; N.C. Dep't of Pub. Safety, Offender Pub.

---

[2] Effective January 1, 2012, the state of North Carolina reorganized its executive branch by consolidating various agencies. The Department of Correction is now the Division of Adult Correction, a subdivision of the Department of Public Safety. See N.C. Gen. Stat. § 143B-600(a)(1).

Info., http://webapps6.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0154730& searchOffenderId=0154730&listurl=pagelistoffendersearchresults&listpage=1 (last visited May 15, 2012). Upon his 2008 admission to DOPS custody at Craven Correctional Institution ("Craven"), defendant O'Neal, an administrative sergeant at Craven, "stated, 'Even though you came in . . . as Said Abdullah Hakim, you're going to be Larry K. Green for . . . [DOPS] purposes, from now on[,]'" in violation of Hakim's rights under the Free Exercise Clause of the First Amendment. Am. Compl. 9; see also [D.E. 56] 2. Hakim seeks "nominal, compensatory & punitive damages . . . ." Am. Compl. 6–9.

DOPS has a policy which "provides that any inmate whose name legally changed may apply for an identification card showing dual names consisting of the inmate's commitment name, as furnished by the court which first sentenced him or the legal name, when proved to be different." Kornegay Aff. [D.E. 70-1] ¶ 5; see id., Ex. A. Pursuant to that policy, "upon request of an inmate to include a legal name on the inmate ID card, the warden or facility head will forward the request and supporting documentation to the Chief of Auxiliary Services for verification that the inmate's name has been legally changed through court order, birth certificate or other legally acceptable documentation." Id. ¶ 6. "[U]pon verification, the Chief of Auxiliary Services will facilitate making the ID card which will show the inmate's name and legal name, directly under the committed name on the ID card. The card will be forwarded to appropriate warden/facility head along with the verification letter." Id. ¶ 7. Additionally, DOPS policy provides that "inmates shall be allowed access to all prison services by providing his [sic] legal name and either his [sic] OPUS number and/or convicted name." Id. ¶ 8. However, "[c]orrectional officers, including correctional sergeants [such as defendant O'Neal], do not have the authority to change an inmate's committed name, add

3

a legal name to an ID card, or recognize a legal name different from the committed name, prior to the inmate following the process set out in" the policy. Id. ¶ 11.

In considering the motion for summary judgment, the court views the evidence in the light most favorable to plaintiff and applies well-established principles under Rule 56 of the Federal Rules of Civil Procedure. See, e.g., Fed. R. Civ. P. 56; Scott v. Harris, 550 U.S. 372, 378 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 325–26 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–55 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson, 477 U.S. at 247–48. The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 325. Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact for trial. See Matsushita, 475 U.S. at 587. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. In evaluating affidavits submitted in support of or in opposition to a motion for summary judgment, the court may reject inadmissible evidence (such as hearsay) described in such affidavits. See Fed. R. Civ. P. 56(c); Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996).

The Free Exercise Clause of the First Amendment guarantees an inmate the right to reasonable accommodation of his sincere religious beliefs. See, e.g., Lovelace v. Lee, 472 F.3d 174, 198–99 (4th Cir. 2006); Ross v. Blackledge, 477 F.2d 616, 618–19 (4th Cir. 1973). The Free Exercise Clause only protects personal practices that are both sincerely held and rooted in religious

belief. Wisconsin v. Yoder, 406 U.S. 205, 215–16 (1972), abrogated on other grounds by, Emp't Div., Dep't of Human Res. v. Smith, 494 U.S. 872 (1990). However, "courts must accord deference to the officials who run a prison, overseeing and coordinating its many aspects, including security, discipline, and general administration." Lovelace, 472 F.3d at 199. Therefore, a prison regulation that abridges an inmate's free exercise rights is valid if it is reasonably related to "legitimate penological interests." Id. (quotation omitted).

A prison policy which "require[s] that the name listed on a prisoner's court commitment is the primary name for identification through the [prison] database . . . . is reasonably related to security because it pertains to identity, and does not violate the First Amendment." Ryidu-x v. Wolfe, Civil Action No. WDQ-11-0358, 2012 WL 346629, at *2 (D. Md. Jan. 31, 2012) (unpublished); see Barrett v. Virginia, 689 F.2d 498, 503 (4th Cir. 1982) ("the mere fact that correctional authorities maintain a prisoner's records in the name he used when convicted implicates no constitutional right. How prison officials choose to organize their records is quintessentially an administrative matter in which the courts should not intervene."). Additionally, "prisons are generally required to recognize only legally changed names." Malik v. Brown, 71 F.3d 724, 727–28 (9th Cir. 1995).

The DOPS policy concerning recognition of legal name changes comports with constitutional requirements. Moreover, Hakim has not refuted O'Neal's evidence that O'Neal could not have change Hakim's prison records immediately upon his admission as Hakim demanded that he do. Thus, O'Neal is entitled to summary judgment.

II.

In sum, the court GRANTS defendant O'Neal's motion for summary judgment [D.E. 69]. This action is DISMISSED. The Clerk of Court shall close the case.

SO ORDERED. This 15 day of May 2012.

                                                  JAMES C. DEVER III
                                                  Chief United States District Judge

6

Case 5:10-ct-03003-D   Document 74   Filed 05/15/12   Page 6 of 6