IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-CT-3003-D

LARRY K. GREEN, a/k/a )
SAID ABDULLAH HAKIM, )
 )
       Plaintiff, )
 )
v. ) **ORDER**
 )
THEODIS BECK, et al., )
 )
       Defendants. )

On January 6, 2010, Larry K. Green, also known as Said Abdullah Hakim ("Hakim" or "plaintiff"), a former state inmate, filed this action under 42 U.S.C. § 1983 ("section 1983"). Compl. [D.E. 1].[1] Hakim proceeds pro se and in forma pauperis [D.E. 2]. Sandra F. Thomas ("Thomas" or "defendant") is the sole remaining defendant, and Hakim's sole remaining claim "against Thomas [is] that she violated Green's First Amendment rights by maliciously refusing to process his properly supported request for a name change." Green v. Beck, 539 F. App'x 78, 81 (4th Cir. 2013) (per curiam) (unpublished).

On June 9, 2014, the court denied Thomas's motion for summary judgment and plaintiff's motions for a temporary restraining order and a preliminary injunction, granted in part defendant's motion for a protective order, and ordered a period of discovery with "a severe limitation on the proper scope of discovery" and set a final motions deadline and date for a bench trial [D.E. 113].

---

[1] On September 9, 2014, Hakim was released from incarceration. See N.C. Dept. of Pub. Safety, Offender Pub. Info., http://webapps6.doc.state.nc.us/opi/viewoffender.do?method=view& offenderID=0154730&searchOffenderId=0154730&listurl=pagelistoffendersearchresults&listpage=1 (last visited Sept. 18, 2014).

On June 25, 2014, Hakim moved for reconsideration of the court's order [D.E. 117]. On August 18, 2014, Hakim filed a "motion to secure attendance" [D.E. 118]. On August 21, 2014, Thomas moved for summary judgment [D.E. 119]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the clerk notified Hakim about the motion for summary judgment, the consequences of failing to respond, and a response deadline of September 12, 2014 [D.E. 121]. On September 8, 2014, defendant moved to continue the bench trial [D.E. 123]. On September 15, 2014, Hakim responded in opposition to defendant's motion for summary judgment [D.E. 124], which defendant moved to strike [D.E. 125]. As explained below, the court denies Hakim's motions for reconsideration and to secure witnesses, grants Thomas's second motion for summary judgment, denies as moot Thomas's motion to continue, and denies in part Thomas's motion to strike.

I.

The court has described the factual and procedural background of this case in detail in prior orders, see, e.g., [D.E. 113] 1–2, 4–5, and will not repeat itself. Briefly, in 2005, Hakim legally changed his name from Larry K. Green to Said Abdullah Hakim, and requested prison officials—including defendant Thomas—to recognize his name change on his prison identification card when he began his most recent term of incarceration in 2008. Am. Compl. [D.E. 31] 7–8; see Mem. Supp. Def.'s Mot. Summ. J., Ex. B [D.E. 120-3] 2 (grievance). On July 16, 2008, a prison administrative office (Combined Records) wrote to Hakim explaining that it had added "[t]he name Said Abdullah Hakim . . . in our cross-reference file," but would not "incur the expense of changing names throughout the records of an individual." Pl.'s Resp. Opp'n Def.'s Mot. Summ. J., Ex. B [D.E. 124-1] 6 (7/16/08 letter from Combined Records to Hakim). On September 22, 2008, Hakim wrote to Thomas to request the recognition of his name change as a result of a grievance response by a prison program director which informed Hakim that prison policy required him to submit his

2

request through the warden (Thomas). Thomas, however, was unaware of this policy and believed that Hakim was required to submit his request to Combined Records in order to effectuate a name change. See Kornegay Aff. [D.E. 70-1] ¶¶ 6–7 & Ex. A (explaining procedure for obtaining name change on identification card through facility warden); Mem. Supp. Def.'s Mot. Summ. J., Ex. A [D.E. 120-2] 3 (response to interrogatory); Ex. B [D.E. 120-3] 3 (grievance response); Ex. C [D.E. 120-4] (9/22/08 letter from Hakim to Thomas); Thomas Aff. [D.E. 119-1] ¶¶ 4, 6–7. Moreover, although Hakim's grievance was specific in its request for a new prison identification card, Hakim's letter to Thomas was not as clear, and Thomas did not typically review grievances. Compare Mem. Supp. Def.'s Mot. Summ. J., Ex. B. [D.E. 120-3] 2 (grievance requesting to "change Larry K Green to Said Abdullah Hakim on my inmate ID card") with Ex. C [D.E. 120-4] (letter "in response to grievance" with "copies of the proper credentials to verify . . . [m]y name is legally Said Abdullah Hakim" and requesting correction of unrelated information and transfer "to either Harnett or Eastern"); see Mem. Supp. Def.'s Mot. Summ. J. [D.E. 120] 3. Nevertheless, Thomas responded to Hakim's letter and instructed him "that he needed to send these documents directly to Combined Records for them to 'approve' his name change." Thomas Aff. ¶ 5; cf. Pl.'s Resp. Opp'n Def.'s Mot. Summ. J., Ex. G [D.E. 124-1] 12 (10/3/08 information form from Thomas to Hakim concerning procedure for requesting transfer).

Thomas never received "any indication that the name change was effectuated and therefore, . . . could not, at the facility level, change [plaintiff]'s name." Mem. Supp. Def.'s Mot. Summ. J., Ex. A [D.E. 120-2] 3–4 (response to interrogatory); Thomas Aff. ¶ 8. Hakim has never explained whether he further pursued the issue with Combined Records, Thomas, or any other warden or prison official upon his transfers to other prison facilities. Cf. Pl.'s Resp. Opp'n Def.'s Mot. Summ. J. 2 (citing Kornegay Aff. [D.E. 70-1] ¶ 9).

3

In any event, Cynthia Bostic, Assistant Director of Support Services for the Department of Public Safety-Division of Prisons, "directed that [Hakim] receive a new inmate identification card with both his commitment name, Larry K. Green, and his current legal name, Said Abdullah Hakim." Bostic Aff. [D.E. 119-2] ¶¶ 2–3. Moreover, Hakim has received a new inmate identification card. Id., Ex. [D.E. 119-3] (copy of prison identification card showing both names); cf. Pl.'s Resp. Opp'n Def.'s Mot. Summ. J. 1 (acknowledging that "DPS stealthily & all of a sudden added 'Said Abdullah Hakim' to plaintiff's inmate ID card").

II.

First, the court addresses Hakim's motion for reconsideration. "[A] district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted." Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514–15 (4th Cir. 2003); see Fed. R. Civ. P. 54(b). "Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment," but are "committed to the discretion of the district court." Am. Canoe Ass'n, 326 F.3d at 514–15.

As with every other filing Hakim has made in this action, Hakim's motion is rambling and appears wholly unrelated to the remaining claim in this case. Hakim's motion largely focuses on allegations of purported constitutional deprivations occurring well after the commencement of this action that bear no connection to Thomas. See Mot. Reconsider [D.E. 117] 1–6. Moreover, to the extent Hakim seeks reconsideration of the court's determination on his discovery requests, Mot. Reconsider 8, the court thoroughly analyzed Hakim's requests under the governing standard. See [D.E. 113] 7–8. Thus, Hakim has not presented any argument warranting reconsideration. To the extent Hakim requests a jury trial, Mot. Reconsider 8, his request is untimely. See Fed. R. Civ. P.

4

38(b). Accordingly, the motion lacks merit and is denied.

Summary judgment is appropriate when, after reviewing the entire record, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In doing so, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

Thomas moves to strike Hakim's response in opposition as untimely and outside the scope of this litigation. Mot. Strike [D.E. 125] 1–2. Although Thomas correctly asserts that the court set a deadline of September 4, 2014, for responding to any dispositive motion, [D.E. 113] 9, the clerk's Roseboro notice to Hakim set a response deadline of September 12, 2014, [D.E. 121] 1. Hakim mailed his response on September 11, 2014 [D.E. 124]. Thus, to the extent defendant seeks to strike Hakim's response as untimely, the court denies the motion. To the extent defendant seeks to strike any new claims contained in Hakim's response, the court grants the motion.

Next, the court addresses Hakim's remaining claim.

> "[T]he first amendment protects an inmate's right to legal recognition of an adopted religious name." Barrett v. Virginia, 689 F.2d 498, 503 (4th Cir. 1982). As a result, an inmate's First Amendment free exercise rights are violated if he is "forced to

5

acknowledge his religiously offensive name" as a precondition of receiving benefits or services to which he is entitled. Ali[ v. Dixon], 912 F.2d [86,] 90[ (4th Cir. 1990)].

> The First Amendment protects religious free exercise itself, such that it is generally improper for a state actor to force a person to "'choose between following the precepts of [his] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of [his] religion on the other hand.'" Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quoting Sherbert v. Verner, 374 U.S. 398, 404 (1963)) (ellipsis omitted). First Amendment injury therefore occurs whenever an inmate is compelled to forfeit his free exercise rights, not simply whenever some further harm befalls him as a result of his forfeiture. An inmate does not need to demonstrate that some additional harm befell him subsequent to being forced to acknowledge a religiously-offensive name; the fact that he was forced to acknowledge that name is itself the injury that is relevant to the First Amendment claim.

Green, 539 F. App'x at 79–80.

Thomas asserts that DPS's action in issuing Hakim a new identification card renders his claim moot to the extent he seeks declaratory and injunctive relief. Mem. Supp. Def.'s Mot. Summ. J. 14–15. Although Hakim describes DPS's actions in issuing him a new identification card as "a below the belt punch & a blatant facade, attempting to hoodwink the court[,]" Pl.'s Resp. Opp'n Def.'s Mot. Summ. J. 1, he cannot seriously contest Thomas's mootness argument. Thus, the court dismisses as moot Hakim's request for declaratory and injunctive relief. See, e.g., Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 108–09 (1998); Spencer v. Kemna, 523 U.S. 1, 17 (1998); Renne v. Geary, 501 U.S. 312, 320–21 (1991); Cnty. of Los Angeles v. Davis, 440 U.S. 625, 633 (1979); Rendelman v. Rouse, 569 F.3d 182, 186–87 (4th Cir. 2009); Incumaa v. Ozmint, 507 F.3d 281, 286 (4th Cir. 2007); Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991); Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987); Taylor v. Rogers, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986).

Hakim also seeks monetary damages on his claim. Am. Compl. [D.E. 31] 8; see Pl.'s Resp. Opp'n Def.'s Mot. Summ. J. 8. Thomas asserts that she did not intentionally violate Hakim's

6

constitutional rights and therefore is entitled to qualified immunity. Mem. Supp. Def.'s Mot. Summ. J. 8–14.

Qualified immunity protects government officials from damages liability in a section 1983 action "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see Wood v. Moss, 134 S. Ct. 2056, 2061, 2066–69 (2014); Plumhoff v. Rickard, 134 S. Ct. 2012, 2020–24 (2014); Stanton v. Sims, 134 S. Ct. 3, 3–7 (2013) (per curiam); Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012); Edwards v. City of Goldsboro, 178 F.3d 231, 250 (4th Cir. 1999). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986); see Messerschmidt v. Millender, 132 S. Ct. 1235, 1244 (2012); Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011).

In determining whether a defendant is entitled to qualified immunity, a court must decide (1) whether the defendant has violated a constitutional right of the plaintiff, and (2) whether that right was clearly established on the date of the alleged misconduct. See Pearson v. Callahan, 555 U.S. 223, 232 (2009); Walker v. Prince George's Cnty., 575 F.3d 426, 429 (4th Cir. 2009). A court may answer either of these questions first. See Pearson, 555 U.S. at 236. A defendant is entitled to qualified immunity if the answer to either question is "no." See, e.g., Wood, 134 S. Ct. at 2067–69; Plumhoff, 134 S. Ct. at 2020–24; Stanton, 134 S. Ct. at 5–7.

Hakim must show that Thomas intended to violate his free exercise rights. See, e.g., Lovelace, 472 F.3d at 194; Pink v. Lester, 52 F.3d 73, 76–77 (4th Cir. 1995); Blount v. Tate, No. 7:11CV00091, 2012 WL 1022336, at *3 (W.D. Va. Mar. 26, 2012) (unpublished); Shaheed v. Winston, 885 F. Supp. 861, 868 (E.D. Va. 1995), aff'd, 161 F.3d 3, 1998 WL 610585 (4th Cir. Aug. 27, 1998) (per curiam) (unpublished table opinion). Negligence will not suffice. See, e.g., Lovelace,

7

472 F.3d at 194; Pink, 52 F.3d at 76–77; Blount, 2012 WL 1022336, at *3; Shaheed, 885 F. Supp. at 868.

Even viewing the evidence in the light most favorable to Hakim, Hakim has not made the requisite showing. Throughout this litigation, Hakim has amply demonstrated that he finds nefarious intent in every possible act, including a recent (and utterly routine) change of counsel for defendant. See [D.E. 117] 6. Indeed, in concluding that Thomas intentionally failed to forward his paperwork to the correct department for processing in order to violate his free exercise rights, Hakim cites only that Thomas was a warden and thus should be "held to a higher standard & degree of legal knowledge than [her] subordinates[.]" Pl.'s Resp. Opp'n Def.'s Mot. Summ. J. 9. The law, however, "do[es] not require of such officials the legal knowledge culled by the collective hindsight of skilled lawyers and learned judges, but instead only the legal knowledge of an objectively reasonable official in similar circumstances at the time of the challenged conduct." Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (internal quotation and citation omitted). "Moreover, prison officials' failure to follow internal prison policies are not actionable under § 1983 unless the alleged breach of policy rises to the level of a constitutional violation." Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir. 2013) (per curiam) (unpublished), cert. denied, 134 S. Ct. 925 (2014). Simply put, Thomas did not violate Hakim's free exercise rights by negligently responding to his request for recognition of his name change by telling him to forward the request directly to Combined Records. Thus, Thomas is entitled to qualified immunity.

III.

In sum, the court DENIES plaintiff's motions for reconsideration and to secure witnesses [D.E. 117–118] and GRANTS defendant's motion for summary judgment [D.E. 119]. The court GRANTS IN PART and DENIES IN PART defendant's motion to strike [D.E. 125] and DENIES

AS MOOT defendant's motion to continue the bench trial [D.E. 123]. The bench trial scheduled for September 26, 2014, is CANCELLED. The clerk shall close the case.

SO ORDERED. This **19** day of September 2014.

JAMES C. DEVER III
Chief United States District Judge